UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ascension Health,<br><br>               Plaintiff,<br><br>   v.<br><br>MultiPlan, Inc.; Claritev Corporation; Allied Benefit Systems, LLC; Allied National, LLC; Consociate, Inc. d/b/a Consociate Health; Healthcare Highways Health Plan (ASO), LLC; United Health Group, Inc.; 90 Degree Benefits, LLC<br><br>               Defendants. | Case No. 1:25-cv-9421<br><br>MDL No. 3121<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**ASCENSION HEALTH'S DIRECT ACTION PLAINTIFF SHORT-FORM COMPLAINT**

The Plaintiff named below files this Short-Form Complaint and (if checked off below) Demand for Jury Trial against the Defendant(s) named below by and through the undersigned counsel. Plaintiff incorporates by reference the factual allegations, as well as the claims and relief checked off below, sought in the Consolidated Master Direct Action Plaintiff Complaint ("Consolidated Master DAP Complaint") as it relates to the named Defendant(s) (checked-off below), filed in *In re Multiplan Health Insurance Provider Litigation*, MDL No. 3121, in the United States District Court for the Northern District of Illinois. Plaintiff files this Short-Form Complaint pursuant to Case Management Order No. 6, filed on the MDL Docket (No. 1:24-cv-06795) at ECF 179.

Plaintiff indicates by checking the relevant boxes below the Parties, Designated Forum, Jurisdiction and Venue, Causes of Actions and other Relevant Information specific to Plaintiff's case. Plaintiff, by and through the undersigned counsel, alleges as follows:

1

I.     **IDENTIFICATION OF PARTIES**

1. **PLAINTIFF**

2. Name of the Plaintiff alleging claims against Defendant(s): **Ascension Health**

3. For each Plaintiff that is a corporation, list the state of incorporation and state of principal place of business. For each Plaintiff that is an LLC or partnership, list the state citizenship of each of its members. For each Plaintiff that is a natural person, list the state of residency and citizenship at the time of the filing of this Short-Form Complaint [Indicate State[s]]: **Missouri**

4. **DEFENDANT(S)**

5. Plaintiff names the following Defendant(s)[1] in this action [*Check all that apply*]:

| | |
|---|---|
| X | Claritev Corporation; MultiPlan, Inc.[2] |
| ☐ | Aetna, Inc., a subsidiary of CVS Health Corporation |
| ☐ | Blue Shield of California Life & Health Insurance Company |
| ☐ | Blue Cross Blue Shield of Michigan Mutual Insurance Company |
| ☐ | Aware Integrated, Inc. and BCBSM, Inc. d/b/a Blue Cross Blue Shield Of Minnesota |
| ☐ | Cambia Health Solutions, Inc. f/k/a The Regence Group |
| ☐ | Centene Corporation |
| ☐ | The Cigna Group |
| ☐ | Elevance Health, Inc. f/k/a Anthem, Inc. |
| ☐ | Health Care Service Corporation |

---

[1] Each Defendant named in this Short-Form Complaint acted directly or through each of that entity's executives, employees, directors, and majority-owned subsidiaries. For example, UnitedHealth Group Inc. acted directly or through, among others, the following majority-owned subsidiaries: United Healthcare Insurance Company, and its affiliates; United Healthcare Services Inc.; United Healthcare Service LLC; Oxford Benefit Management, Inc.; UMR, Inc.; Sierra Health and Life Insurance Company, Inc.; Sierra Health-Care Options, Inc.; Health Plan of Nevada, Inc.; and United Healthcare of Florida, Inc.

[2] Since the format of this short-form complaint was adopted by the Court, MultiPlan, Inc. has conceded that it is subject to government investigations; replaced its CEO, COO, CFO, and general counsel; and changed its name to "Claritev."

|   | |
|---|---|
| ☐ | Highmark Health |
| ☐ | Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey |
| ☐ | Humana Inc. |
| ☐ | Kaiser Foundation Health Plan, Inc. |
| ☐ | Molina Healthcare, Inc. |
| X | UnitedHealth Group Inc. |
| X | Allied National, LLC |
| ☐ | Benefit Plans Administrators of Eau Claire, LLC |
| ☐ | Central States Southeast and Southwest Areas Health and Welfare Fund |
| X | Consociate, Inc. d/b/a Consociate Health |
| X | Healthcare Highways Health Plan (ASO), LLC |
| ☐ | Secure Health Plans Of Georgia, LLC d/b/a Secure Health |
| ☐ | Sanford Health Plan |
| ☐ | CareFirst Of Maryland |
| ☐ | Blue Cross Blue Shield of Massachusetts |

6. **OTHER DEFENDANTS**

7. For each "Other Defendant" Plaintiff contends are additional parties and are liable or responsible for Plaintiff's damages alleged herein, Plaintiff must identify by name each Defendant and its citizenship, and Plaintiff must plead the specific facts supporting any claim against each "Other Defendant" in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiff may attach additional pages to this Short-Form Complaint.

|   | NAME | CITIZENSHIP |
|---|------|-------------|
| 1 | Allied Benefit Systems, LLC | Illinois |
| 2 | 90 Degree Benefits, LLC | Alabama |

## II. DESIGNATED FORUM

8. For Direct Filed Cases: Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: **Northern District of Illinois**

9. For Transferred Cases: Identify the Federal District Court in which the Plaintiff originally filed and the date of filing: **Not Applicable**

## III. JURISDICTION AND VENUE

10. Subject Matter Jurisdiction is based on:

    ☐ Diversity of Citizenship
    ☒ Federal Question
    ☐ Other (The basis of any additional grounds for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure):
    _____
    _____

## IV. FACTS AND INJURIES ASSERTED

11. Plaintiff adopts all paragraphs of the Consolidated Master DAP Complaint by reference, except for the allegations set forth in any cause of action that Plaintiff does not adopt (as indicated below).

12. Plaintiff adopts and alleges as injuries resulting from the challenged conduct the injuries to DAPs set forth in the Consolidated Master DAP Complaint.

## V. ADDITIONAL FACTS DEMONSTRATING STANDING TO BRING CAUSES OF ACTION

13. Plaintiff alleges the following additional facts in support of its standing to bring causes of action:

    **See attached additional pleadings.**

## VI. CAUSES OF ACTION ASSERTED

14. Plaintiff adopts and asserts the following Causes of Action alleged in the Consolidated Master DAP Complaint, and the allegations with regard thereto, against the Defendants

4

identified above (*check all that are adopted*).

| Check all that apply | Count | Cause of Action | Law pursuant to which the cause of action is asserted in the Master Complaint |
|---|---|---|---|
| ☐ | I | Horizontal Agreements in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | II | Hub-And-Spoke Agreement in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | III | Principal-Agent Combinations in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | IV | Agreements to Unreasonably Restrain Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | V | Anticompetitive Information Exchange (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☐ | VI | Violation of State and D.C. Antitrust Statutes | |
| ☐ | VII | Violation of State Consumer Protection Laws | |
| ☐ | VII | Unjust Enrichment | |

**NOTE**

If Plaintiff wants to allege additional Causes of Action other than those selected in the preceding paragraph, which are the Causes of Action set forth in the Master Complaint, the facts supporting those additional Causes of Action, must be pled in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiff may attach additional pages to this Short-Form Complaint.

### VII. ADDITIONAL CAUSES OF ACTION

15. Plaintiff asserts the following additional Causes of Action and supporting allegations against the following Defendants:

    **None**.

### VIII. PRAYER FOR RELIEF

5

16. *Check all that apply*:

[x] **WHEREFORE,** Plaintiff prays for all available compensatory damages, treble damages, punitive damages in amounts to be proven at trial, and judgment against Defendant(s) and all such further relief that this Court deems equitable and just as set forth in the Master Complaint, and any additional relief to which Plaintiff may be entitled, including disgorgement.

[x] **WHEREFORE,** Plaintiff prays for declaratory and injunctive relief and judgment against Defendant(s) and all such further relief that this Court deems equitable and just as set forth in the Master Complaint, and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

[*Check the applicable box*]:

[x] Plaintiff hereby demands a trial by jury as to all claims in this action.

[ ] Plaintiff **does not demand** a trial by jury as to all claims in this action.

****

By signature below, Plaintiff's counsel hereby confirms their submission to the authority and jurisdiction of the United States District Court of the Northern District of Illinois and oversight of counsel's duties under Federal Rule of Civil Procedure 11, including enforcement as necessary through sanctions and/or revocation of *pro hac vice* status.

| | |
|---|---|
| Dated: August 8, 2025 | */s/ Stephen M. Medlock* |
| | Stephen M. Medlock |
| | Stephen Cohen |
| | Rami Abdallah E. Rashmawi |
| | **VINSON & ELKINS LLP** |
| | 2200 Pennsylvania Ave., N.W. |
| | Suite 500 West |
| | Washington, DC 20037 |
| | Tel: (202) 639-6500 |
| | Fax: (202) 639-6604 |
| | smedlock@velaw.com |
| | scohen@velaw.com |
| | rrashmawi@velaw.com |
| | |
| | Michael Scarborough |
| | Dylan Ballard |
| | Madison Lo |
| | 555 Mission Street |
| | Suite 2000 |
| | San Francisco, CA 94105 |
| | Tel: (415) 979-6900 |
| | Fax: (415) 651-8786 |
| | mscarborough@velaw.com |
| | dballard@velaw.com |
| | mlo@velaw.com |
| | |
| | Mackenzie Newman |
| | 1114 Avenue of the Americas |
| | New York, NY 10036 |
| | Tel: (212) 237-0000 |
| | Fax: (212) 237-0100 |
| | mnewman@velaw.com |
| | |
| | *Counsel for Plaintiff* |

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on August 8, 2025, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

*/s/ Stephen M. Medlock*
Stephen M. Medlock

## ADDITIONAL FACTUAL ALLEGATIONS

1. Ascension Health ("Ascension") is one of the Nation's leading not-for-profit Catholic health systems. Consistent with the healing mission of Jesus Christ, its mission is to provide compassionate, personalized care to all, with a special attention to those most vulnerable. In 2024, Ascension provided $2.1 billion in care to persons living in poverty and other community benefit programs.

2. Through certain subsidiaries, Ascension has operated healthcare facilities in 16 states and the District of Columbia. Its network encompasses approximately 99,000 associates, 23,000 aligned healthcare providers, 94 wholly-owned or consolidated hospitals, and ownership interest in 27 additional hospitals. Ascension also operates 30 senior living facilities and a variety of other sites offering a range of healthcare services.

3. Ascension was harmed by the MultiPlan Cartel because it submitted claims for out-of-network care that were underpaid by members of the MultiPlan Cartel. Ascension has submitted billions of dollars in submitted charges for out-of-network services that were systematically underpaid by members of the MultiPlan Cartel. For example, performance reports created by MultiPlan show that members of the MultiPlan Cartel used MultiPlan's common pricing methodology to underpay Ascension for out-of-network services.

4. ***Allied Benefit Systems.*** Defendant Allied Benefit Systems, LLC ("Allied Benefit") is a Delaware limited liability company with a principal place of business in Chicago, Illinois. Allied Benefit claims to be "the largest, independent third-party administrator in the United States." As a third-party administrator ("TPA"), Allied Benefit performs administrative tasks for health insurance plans, including claims processing and pricing, billing, enrollment, and customer service.

9

5. Allied Benefit has entered into a Network Access Agreement to utilize MultiPlan's services to underpay providers for out-of-network services, including through the use of MultiPlan's common pricing methodology for out-of-network services.

6. ***90 Degree Benefits.*** Defendant 90 Degree Benefits, LLC. ("90 Degree") is an Alabama limited liability company with its principal place of business in Birmingham, Alabama. Previously known as Employee Benefit Claims of Wisconsin, Inc,; Employee Benefit Consultants, Inc.; and EBSO, Inc., 90 Degree is a wholly-owned subsidiary of Blue Cross Blue Shield of Alabama. On July 18, 2020, 90 Degree obtained majority control over Defendant Allied National. Indeed, Allied National markets itself as "Allied National a 90 Degree Benefit Company." 90 Degree is a TPA. As a TPA, Allied Benefit performs administrative tasks for health insurance plans, including claims processing and pricing, billing, enrollment, and customer service.

7. 90 Degree has entered into a Network Access Agreement to utilize MultiPlan's services to underpay providers for out-of-network services, including through the use of MultiPlan's common pricing methodology for out-of-network services.

8. ***Client Advisory Board Meetings.*** Allied Benefit has long been a member of the MultiPlan Cartel. Patrick Gabrione, the former Chief Operating Officer of Allied Benefit, attended the 2017, 2018, 2019, 2021, and 2022 MultiPlan Client Advisory Board Meetings. After Mr. Gabrione's retirement in early 2023, Martin Laskowski, the Senior Vice President of Commercial Solutions at Allied Benefit Systems, attended the 2023 MultiPlan Client Advisory Board Meeting.

9. The Client Advisory Board Meetings were a meeting of the "rim" of MultiPlan's hub-and-spoke conspiracy. For example, the 2019 meeting included 132 attendees from 78 companies, including representatives of MultiPlan, Cigna, Blue Cross Blue Shield of Minnesota, Kaiser, HCSC, Humana, Elevance, Secure Health, United Health, Sanford, Blue Cross Blue Shield

of Michigan, Molina, BPA, Consociate, and Highmark, among others.

10. The Client Advisory Board Meetings included both business sessions with presentations from MultiPlan executives and social functions, such as cocktail hours, golf, and guided hikes.

11. No antitrust guidance concerning competitor communications was provided to attendees at the Client Advisory Board Meetings and no antitrust attorneys monitored the proceedings to make sure that discussions did not include legally improper topics or competitive sensitive information.

12. During Client Advisory Board meetings, MultiPlan's executives described *collective* changes that MultiPlan was making to the pricing methodology that Defendants used and how much money Defendants would make *collectively* through these tweaks to MultiPlan's collective pricing methodology. For example, in a 2015 speech to the MultiPlan Client Advisory Board Meeting, Michael Ferrante, the former Executive Vice President and Chief of Operation for MultiPlan, explained changes that MultiPlan had made to its Data iSight and negotiation services rules that resulted in payors collectively paying providers tens of millions of dollars less for out-of-network services. Mr. Ferrante also described real-time and forward-looking changes that MultiPlan would be making to its collective pricing rules for out-of-network services and the projected underpayments that those changes to pricing rules would cause.

13. Thus, every Defendant that attends the Client Advisory Board Meetings has signed contracts to utilize MultiPlan's common pricing methodology for out-of-network claims. They have agreed to send providers' out-of-network bills to MultiPlan to set the prices paid for those claims. They all met in the same room at the same time and discussed the pricing methodology they would use to purchase out-of-network services. And they all implemented those pricing

methodologies after those meetings.

14. ***Abrasion.*** During these Client Advisory Board Meetings, MultiPlan made it clear that by using MultiPlan's common pricing methodology the payors could obtain pricing results that they could not otherwise achieve by acting unilaterally due to provider or member abrasion. At these meetings, MultiPlan repeatedly emphasized that its pricing methodology could minimize abrasion while still lowering the prices paid to purchase out-of-network services.

15. In a market free from collusion, abrasion would be a significant check on providers attempting to purchase out-of-network services at sub-competitive prices. For elective services, providers would consider, threaten, or actually cease providing out-of-network services for patients associated with payors that routinely low-balled them on out-of-network compensation. That provider abrasion would undermine a central tenant of modern PPO plans—patients can see any doctor regardless of whether they are in-network and receive some health insurance coverage for those services. Indeed, in an October 14, 2024 post on its website, MultiPlan identified abrasion as one of the "Top 5" challenges payors face. However, MultiPlan assured payors that if they used MultiPlan, MultiPlan would "minimize provider abrasion."

16. The way that MultiPlan minimizes abrasion is simple. If nearly all payors in the relevant market adopt MultiPlan's common pricing methodology, there is no opportunity for abrasion. The provider has no practical choice but to accept the prices set by the MultiPlan Cartel. Thus, it is little wonder that MultiPlan touts its Data iSight algorithm as lowering payments for out-of-network services "with low provider abrasion." As MultiPlan explained on its website in a May 20, 2020 post, "a payor's strategy shouldn't result in provider abrasion" and only MultiPlan's common pricing methodology can lower the prices payors pay to purchase out-of-network services without risking provider abrasion. Through the use of these common "analytics," MultiPlan says

12

that it can avoid "much of the abrasion that came along with traditional . . . solutions."

17. Allied Benefit and 90 Degree Benefits used MultiPlan's Data iSight algorithm to underpay healthcare providers for out-of-network services. For instance, records kept by MultiPlan show that Allied Benefit has underpaid providers millions of dollars using MultiPlan's Data iSight algorithm.

18. MultiPlan's common pricing methodology is big business. Between 2021 and 2025 alone, MultiPlan's Data iSight algorithm caused providers to underpay providers by over $26 billion when measured against providers' billed charges. While MultiPlan and other members of the cartel have long claimed that the appropriate measure of prices for out-of-network services is the Fair Health database or usual, customary, and reasonable charges ("UCR"), internal records demonstrate that MultiPlan and other members of the MultiPlan Cartel measure the effectiveness of MultiPlan's pricing methodology against providers' billed charges and then allocate payments to MultiPlan (through a percentage of savings payment) and the health plan (through a shared savings charge to an employer-sponsored health plan) using the difference between providers' billed charges and the price set by MultiPlan's pricing methodology.